UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARCUS BATTS                          CIVIL ACTION NO. 11-cv-1392

VERSUS                                JUDGE FOOTE

WARDEN, ALLEN CORRECTIONAL            MAGISTRATE JUDGE HORNSBY
CENTER

## REPORT AND RECOMMENDATION

**Introduction**

Marcus Donell Batts ("Petitioner") was charged with attempted armed robbery and aggravated second-degree battery. He waived a jury, and Caddo Parish District Judge Leon Emanuel found him guilty and sentenced him to serve 26 years for the attempted armed robbery and nine years for the aggravated second-degree battery.

Petitioner filed a direct appeal and challenged the length of his sentences. State v. Batts, 979 So.2d 684 (La. App. 2d Cir. 2008). He then filed a post-conviction application in state court and presented the issues that he now asserts in his federal petition for habeas corpus relief. For the reasons that follow, it is recommended the petition be denied.

**Sufficiency of the Evidence**

Nasim Falah owned the Quick Stop convenience store on Greenwood Road in Shreveport. Eddie Palmer, an employee at the store, was friends with Petitioner. They often referred to each other as cousins, but they were not related by blood.

Mr. Falah testified that he first met Petitioner when Petitioner came to the store and asked for a job.  Falah hired Petitioner, but he did not show up for work the next day.  He did return a couple of days later and explained that he had been out of town.  Falah told him that he did not act like he wanted to work, so there was no longer a job for him.

Mr. Falah testified that Petitioner returned to the store a day or two later and was "showing out," so Falah kicked him out of the store.  Mr. Falah testified that, as he and Eddie were closing that evening, Petitioner hit him in the back of the head with a brick two or three times, then tried to put his hand in Falah's pocket to get Falah's money.  Petitioner continued to hit Falah with a brick, perhaps five or six more times.  Petitioner eventually ran away without getting any money.

Mr. Falah said that he heard Petitioner ask, during the struggle, for someone to come and help him.  Falah did not see a second robber, but Eddie Palmer testified that there was a second man who attacked him and held him at gunpoint during the attempted robbery.  Eddie and Mr. Falah called 911, and Eddie drove Falah to a nearby emergency room.  Falah had significant injuries, swelling, and bleeding on his head, but a CT scan did not reveal any fractures.  His wounds were cleaned, he was given an injection and a prescription for pain medication, and he was released.  The emergency room physician testified that the wounds were quite serious and were not consistent with a mere fall.  Rather, they were consistent with being struck in the head with an object multiple times.

Eddie Palmer testified that Petitioner asked him for help getting a job, so Palmer lined up an interview between Petitioner and Mr. Falah.  Palmer said there was one interview, but

Petitioner missed two other scheduled interviews.  He was late for a yet another scheduled interview, and Mr. Falah told Petitioner that he did not need him.  The two men argued, and Palmer pulled Petitioner to the side.  Palmer testified that Petitioner told him that he should rob Mr. Falah, but Palmer was able to persuade him to agree that he would not do so.

Despite that agreement, as Falah and Palmer were closing that evening, two men rushed them.  Palmer said one man, wearing a hood and mask, held him with a gun while Petitioner attacked Falah with a brick and hit him in the head with it several times.  Security guards at the state museum across the street heard the struggle and shined a high beam light on the area.  The two robbers ran.

Petitioner gave a long, narrative testimony in which he claimed that it was Mr. Falah who attacked him.  He denied that any brick was involved.  Petitioner first described visiting the store to get some chicken.  Mr. Falah allegedly treated Petitioner rudely and threatened to shoot him if he did not get out of the store.  Petitioner nonetheless returned that evening to pick up Palmer after work.  He said he and Palmer got in the car in the parking lot and were listening to loud music and preparing to smoke marijuana when Mr. Falah approached.

Petitioner testified that Falah called him a racial slur and demanded that he move his car.  Petitioner said he got out and told Falah that he heard what he said, and Falah approached him, pointed his finger, and said he was not scared of him.  Petitioner said Falah put his hands on Petitioner, and a fight ensued.  Petitioner said he got a lucky punch in with the hand on which he was wearing a ring, and Falah fell down.  Petitioner said that Eddie Palmer then tried to help Mr. Falah up, but Falah became confused, panicked, and ended up

running and falling on his face.  Petitioner left soon afterwards.  He claimed that Eddie Palmer did not want to admit that the men possessed marijuana, so Palmer made up the story that Petitioner attacked and tried to rob Falah.

The trial judge stated that, after assessing the credibility of the witnesses and reviewing the totality of the evidence, the State had proved beyond a reasonable doubt the elements of the two charged crimes.  He made specific findings that the brick was used in a manner to satisfy the dangerous weapon element of the battery count, and the significant head injury, dizziness, and some unconsciousness with severe pain satisfied the serious bodily injury element.  Tr. 259-260.  When the sufficiency of the evidence was challenged in post-conviction, the same trial judge found that the testimony of the victim and eyewitness had been accepted by the court and were sufficient to support the conviction.  Tr. 544-45.  The appellate court stated that a review of the evidence, viewed under the <u>Jackson</u> standard, was sufficient to support all elements of both convictions.  Tr. 622.  The Supreme Court of Louisiana denied writs without comment.  Tr. 652.

Petitioner now seeks federal habeas relief based on what he argues is insufficient evidence to support his convictions.  In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

Petitioner argues that the facts should have been found in accordance with his testimony and points to the lack of blood evidence or other witnesses to corroborate Falah and Palmer.  He contends that the lies of both State witnesses were blatantly obvious, and he argues that medical records suggest Mr. Falah's injuries were not serious.

Most of Petitioner's argument is based on the credibility of the witnesses.  "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review."  Schlup v. Delo, 115 S.Ct. 851, 868 (1995).  "A determination of a factual issue made by a State court shall be presumed correct" in a claim for federal habeas relief, and Petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005), quoting 28 U.S.C. § 2254(e)(1).  "All credibility choices and conflicting inferences are to be resolved in favor of the verdict."  Id.

The trial judge was fully justified in finding the State witnesses  more credible, and there is no evidence that would allow a federal court to disregard that choice.  As for the

serious bodily injury element, the testimony of the physician and Mr. Falah about the extent of the injuries and pain was sufficient.  The physician said that she actually remembered Mr. Falah, which was unusual given the number of ER patients she saw over the years,  because he was "significantly swollen," suffered "very significant" pain, and "stands out as a patient of mine."  Mr. Falah testified at trial that he still suffered from pain and dizziness, and the physician said that post-concussive problems such as headaches could last months or years. There is no basis for federal relief from the convictions based on this claim.

**Perjury**

Petitioner argues that the State witnesses committed perjury.  He does not devote a section of his memorandum to the claim, but scattered throughout his sufficiency and other arguments are contentions that the State witnesses should not have been found credible.  He points to the absence of a job application or other documents to support the contention that he was hired for a job, questions the logic of certain actions or inactions taken by witnesses, and points to the absence of evidence of any money that could have been taken, and he notes various purported conflicts in the evidence.

It will seldom be the case that multiple witnesses give perfectly consistent testimony, and there will almost always be some gaps or weaknesses in testimony that might be attacked.  Petitioner has shown no more than that.  He has not at all established that any witness committed perjury.  Even if he had, habeas relief would not be available unless the perjured testimony was material to the conviction and Petitioner could prove that the State knowingly used the perjured testimony.  Skipper v. Wainwright, 598 F.2d 425 (5th Cir.

1979); <u>Lindsey v. Cain</u>, 2009 WL 1575466, *13 (E. D. La. 2009).  There is absolutely no evidence to support such a claim.

When this issue was presented on post-conviction review, the trial court rejected it, stating that Petitioner had not shown that the court was unreasonable in relying on the testimony of the victim and eyewitness. Tr. 545-46.  The state appellate court did not address the issue in its brief written decision.  The state court's decision was entirely correct and cannot be characterized as an objectively unreasonable application of clearly established federal law.

**Prosecutorial and Judicial Bias**

Petitioner argued in his post-conviction application that the prosecutor was biased because she referred to his prior felonies without pretrial approval, did not call as witnesses the officers who first reached the scene, and amended the charges after prosecution commenced to add the attempted armed robbery count.  Tr. 468.  The trial court explained that the claim lacked merit because the prior felonies were not used as substantive evidence but to cross-examine Petitioner after he testified, the prosecutor is the sole determiner of what witnesses she will call, and the prosecutor has the sole discretion as to which charges to bring.  Tr. 546.  The appellate court did not address this issue in its decision.

Petitioner applied to the Supreme Court of Louisiana for a writ.  He mentioned in his writ application that his post-conviction application raised four issues, including bias, but he did not brief that claim in the body of the writ application.  Tr. 624-49.  Not including the issue in the writ application means that the bias claim was not properly exhausted in the state

courts.  O'Sullivan v. Boerckel, 119 S.Ct. 1728 (1999).  Similarly, Petitioner has listed this claim in his federal petition and memorandum, but he effectively abandoned it by not providing any briefing on it.  The claim also lacks merit for the reasons stated by the trial judge.

**Ineffective Assistance of Counsel**

Petitioner faults his trial attorney for not adequately cross-examining Mr. Falah, not questioning "several people" who were standing around the crime scene, not visiting the crime scene, and not exploring inconsistencies between trial testimony and statements recorded in police reports.  Petitioner also complained in his state application that counsel coerced him to waive his right to a jury, but he did not brief that claim in his federal memorandum.

The trial court denied this claim on post-conviction.  The judge noted that Petitioner had not shown how additional cross-examination would have changed the verdict, what the testimony of the alleged witnesses would have been, or other particular facts that would warrant relief.  Tr. 541-44.  The appellate court denied a writ with the statement that Petitioner "has failed to demonstrate a reasonable probability that, but for those alleged unprofessional errors, the result of the proceedings would have been different."  Tr. 622.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated on the merits by the state court, so Section 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold.  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be."  Harrington v. Richter, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  Id.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable."  Id.

The state court was not unreasonable in its determination that Petitioner had not demonstrated entitlement to relief.  He claims that the trial judge was fooled that Mr. Falah was an honest business operator, but Petitioner later obtained evidence that Falah had been arrested for improper display of a business license and not having a proper alcohol permit.  Counsel might have cross-examined Falah based on a conviction, but bringing up a mere arrest would be impermissible.  In any event, the referenced offenses are not the kind that would likely undermine a witnesses's credibility to any significant extent.  The same is true with respect to Petitioner's claim that Eddie Palmer should have been noted to have been

arrested for domestic violence.  A mere arrest cannot be used to impeach.  Furthermore, Palmer admitted during his direct examination that he had been convicted of battery.

Petitioner claims there were "several people standing around" who could have said what actually happened.  Petitioner does not identify these witnesses or provide the substance of their testimony.  To obtain relief on such a claim, which is not favored on federal habeas review, Petitioner would have to show that the witness would have testified at trial and given favorable testimony.  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000); See also Bruce v. Cockrell, 74 Fed. Appx. 326 (5th Cir. 2003)(rejecting Strickland claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify.")

A police report does state that a Mr. Caldwell saw two young males wearing dark clothing drag the victim into the parking lot.  The victim was bleeding from the face and yelling for help.  He said the suspects picked up paper from the parking lot, then ran away.  He said that the victim then had an argument with Eddie Palmer because Palmer knew the suspect.  Tr. 17.  That testimony would not have changed the verdict.  No other witness statements have been found in the record, and Petitioner has not submitted any.

Petitioner complains that his counsel should have visited the scene, but he does not articulate anything that counsel would have learned that might have allowed counsel to obtain an acquittal.  As for counsel's cross-examination of Falah and Palmer, he did raise questions about the veracity of their version of the events, especially with Palmer.  For example, he pointed out that there was no evidence Palmer told police that Petitioner had

threatened to rob the store earlier that day.  Petitioner complains that counsel should have also pointed out other discrepancies, such as the note in a police report that Palmer admitted, upon being pressed, that the second suspect had only a stick and not a gun.  The same report recorded Palmer as saying that money fell out of Falah's jacket, and Petitioner grabbed some of the money before the suspects ran.  Tr. 19.

Those statements in the report were at odds with Palmer's trial testimony, but there is no reasonable basis to believe that the verdict would have been different had counsel established those inconsistencies.  There were obviously questions about Palmer's story and whether he was somehow involved in the robbery.  Counsel did a good job of pointing out the weaknesses in Palmer's version of the facts and questioning his credibility.  Petitioner has now found additional grounds for attack, but that does not mean that counsel's performance was unconstitutionally inadequate.  Hindsight and time to review the record in detail will almost always reveal additional questions that could have been asked, but that does not warrant relief from the conviction.  Perhaps Palmer was in on the robbery.  Even if he was, Mr. Falah gave solid testimony that it was Petitioner, a man he knew, who actually attacked him and tried to rob him.  So even if counsel could have shattered Palmer's credibility, Petitioner would have still been convicted based on Falah's testimony. The state court's rejection of the ineffective assistance claim was an entirely reasonable application of the Strickland standard.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days

from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

 THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of July, 2014.

Mark L. Hornsby
U.S. Magistrate Judge